**FIRST DIVISION**
**BARNES, P. J.,**
**MCMILLIAN and MERCIER, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**March 9, 2018**

# In the Court of Appeals of Georgia

A17A1875. BAJA PROPERTIES, LLC v. MATTERA et al.
A17A1976. MATERRA v. GOLDEN et al.

MERCIER, Judge.

These consolidated appeals involve disputes related to the construction of a house in Cumming, Georgia. In September 2013, Ugo Mattera entered into a written construction contract with Baja Properties, LLC.; Stephen Chad Golden, the sole owner of Baja Properties, signed the contract and addendums on Baja Properties's behalf. Pursuant to the contract, Baja Properties agreed to build a house for Ugo Mattera on land he and Kellie Mattera owned. Baja Properties completed some of the construction, but disputes developed and Ugo Mattera terminated the contract before the house was completed. Stephen Golden did not have a Georgia builder's or

contractor's license when the parties entered into the contract or when the work was performed.

In February 2015, Baja Properties sued the Matteras for breach of contract, quantum meruit, and claim of lien. The Matteras answered the complaint and filed a counterclaim for breach of contract and negligence. Ugo Mattera then filed a separate action against Stephen Golden and James Golden (as alleged owners and/or managers of Baja Properties),[1] asserting claims for negligence and fraud. The trial court consolidated the two cases.

The Matteras moved for summary judgment on Baja Properties's claims against them, asserting that OCGA § 43-41-17 (b) bars an unlicensed contractor from enforcing in law or equity a contract for the performance of work for which a license is required. The trial court granted the Matteras' motion for summary judgment on all of Baja Properties's claims, finding that the claims were barred by OCGA § 43-41-17 (b).

---

[1] According to Stephen Chad Golden's affidavit, James Golden was an employee of Baja Properties; he was not an officer or director of Baja Properties, but he acted as superintendent on the project.

Baja Properties moved for summary judgment on the Matteras' counterclaims claims against it and the Matteras' claims against the Goldens. The court found that, although OCGA § 43-41-17 (b) barred Baja Properties from enforcing the construction contract against the Matteras, Baja Properties was entitled to rely on the contract terms to defend the breach of contract claims asserted against it. The court concluded that Baja Properties was entitled to summary judgment on the Matteras' breach of contract claims because Ugo Mattera had improperly terminated the contract, and that Baja Properties and the Goldens were entitled to summary judgment on the Matteras' fraud claims because the Matteras had not pointed to evidence of each element of fraud. The trial court denied the Goldens' motion for summary judgment on negligence claims that Ugo Mattera asserted against the Goldens in their personal capacities.

In Case No. A17A1875, Baja Properties appeals the grant of summary judgment to the Matteras, and the Goldens appeal the denial of their motion for summary judgment on the negligence claims asserted against them. In Case No. A17A1976, Ugo Mattera appeals the grant of summary judgment to the Goldens on his fraud claims. For the reasons that follow, we affirm in part and reverse in part the judgment in Case No. A17A1875, and we affirm the judgment in Case No. A17A1976.

3

1. Baja Properties contends that the trial court erred by holding that the claims it asserts against the Matteras are barred by OCGA § 43-41-17 (b), when its claims come within an exemption set out in OCGA § 43-41-17 (h). The contention is without merit.

> [O]n appeal from the grant of summary judgment, [the appellate court] conducts a de novo review of the evidence to determine whether there is a genuine issue of material fact and whether the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law.

*Boyd v. JohnGalt Holdings, LLC*, 294 Ga. 640, 644 (4) (755 SE2d 675) (2014) (citation and punctuation omitted).

OCGA § 43-41-17 (a) provides, in pertinent part, that no person shall have the right to engage in the business of residential or general contracting without a current valid contractor license. OCGA § 43-41-17 (b) provides:

> As a matter of public policy, any contract entered into on or after July 1, 2008, for the performance of work for which a residential contractor or general contractor license is required by this chapter *and not otherwise exempted under this chapter* and which is between an owner and a contractor who does not have a valid and current license required for

such work in accordance with this chapter *shall be unenforceable in law or in equity by the unlicensed contractor*....Notwithstanding any other provision of law to the contrary, if a contract is rendered unenforceable under this subsection, no lien or bond claim shall exist in favor of the unlicensed contractor for any labor, services, or materials provided under the contract or any amendment thereto.

(Emphasis supplied.)

It is undisputed that Baja Properties and the Goldens did not have Georgia contractor's licenses when the construction contract was executed and when the work was performed pursuant to the contract. The construction contract clearly identifies Baja Properties as the "Contractor" and Ugo Mattera as the "Owner" of the land on which the construction was to be completed. Thus, under OCGA § 42-41-17 (b), the construction contract is not enforceable by Baja Properties in law or in equity unless an exemption applies.

Baja Properties argues that it is exempted from the rule set out in OCGA § 43-41-17 (b) by a provision in OCGA § 43-41-17 (h). Subsection (h) states, in part:

Nothing in this chapter shall preclude any person from constructing a building or structure on real property owned by such person which is intended upon completion for use or occupancy solely by that person and his or her family, firm, or corporation and its employees, and not for

5

use by the general public and not offered for sale or lease. In so doing, such person may act as his or her own contractor personally providing direct supervision and management of all work not performed by licensed contractors.

Baja Properties posits that because subsection (h) permits a property owner to act as his own contractor and to use unlicensed contractors, the construction contract at the center of this dispute is "otherwise exempted" from the unenforceability provision of subsection (b).

However, "we must afford the statutory text its plain and ordinary meaning." *Deal v. Coleman*, 294 Ga. 170, 172-173 (1) (a) (751 SE2d 337) (2013) (citation omitted). Subsection (h) does not provide that an unlicensed contractor is exempt from the rule that prohibits an unlicensed contractor from enforcing an agreement for the performance of work for which a license is required. We point out that OCGA § 43-41-1 et seq. "shall be liberally construed so as to accomplish the intent" of the legislature, which is "to safeguard homeowners . . . against faulty, inadequate, inefficient, and unsafe residential and general contractors." We will not interpret subsection (h) as allowing an unlicensed contractor to enforce a construction contract, when that subsection does not clearly provide such. Indeed, the general rule is that

"[w]here a statute provides that persons proposing to engage in a certain business shall procure a license before being authorized to do so, . . . contracts made in violation of such statute are void and unenforceable." *Brantley Land & Timber, LLC v. W & D Investments, Inc.*, 316 Ga. App. 277, 278 (729 SE2d 458) (2012) (citations and punctuation omitted). Thus, the trial court did not err by granting summary judgment to the Matteras on Baja Properties's claims for breach of contract, quantum meruit and lien.

2. The Goldens contend that the trial court erred by denying their motion for summary judgment as to negligence claims asserted against them personally. They assert that corporate law insulates them from liability and that, while a member of an limited liability corporation may be liable for torts in which he individually participated, Ugo Mattera has pointed to no evidence that the Goldens specifically directed a particular negligent act or participated or cooperated therein. We agree with the Goldens that they were entitled to summary judgment on Ugo Mattera's negligence claim.

> An officer of a corporation who takes part in the commission of a tort by
> the corporation is personally liable therefor, and an officer of a
> corporation who takes no part in the commission of a tort committed by

7

the corporation is not personally liable unless he specifically directed the particular act to be done or participated or cooperated therein.

*Jennings v. Smith*, 226 Ga. App. 765, 766 (1) (487 SE2d 362) (1997) (citation omitted). Thus, if Baja Properties was negligent in constructing the house, an officer of the corporation could be held personally liable for the negligent construction if he specifically directed the manner in which the house was constructed or participated or cooperated in its negligent construction. See *Cherry v. Ward*, 204 Ga. App. 833, 834 (1) (a) (420 SE2d 763) (1992).

In response to Baja Properties's and the Goldens' motion for summary judgment, wherein they argued that there was an absence of facts to support any causes of action against the Goldens in their personal capacities, Ugo Mattera made only conclusory statements as to the Goldens' negligence (e.g., that "the Goldens directly participated in the alleged tortious conduct," that they "were direct participants in the negligent and fraudulent acts and omissions," and that "there is specific and affirmative evidence that the Goldens directly participated in the tortious conduct"), and he failed to identify any specific negligent acts by Baja Properties or the Goldens. While Ugo Mattera averred in an affidavit that the Goldens were frequently at the construction site and oversaw and furnished much of the negligent work, he did not

8

specify in the affidavit the alleged negligent work or point to any specific evidence showing negligent acts that the Goldens undertook individually. Ugo Mattera's appellate brief likewise fails to cite to any specific evidence of negligence by Baja Properties or the Goldens.

In order to survive motion for summary judgment on his negligence claim, Ugo Mattera was required to point to specific evidence giving rise to a triable issue of material fact. See *Head v. Sears Roebuck & Co.*, 233 Ga. App. 344 (503 SE2d 354) (1998). "A shadowy semblance of an issue is not enough to defeat the motion for summary judgment." *Owen v. M & M Metro Supply*, 198 Ga. App. 420, 422 (2) (401 SE2d 612) (1991) (citation and punctuation omitted). Ugo Mattera failed to come forward with any evidence of a specific, negligent act on the part of the Goldens that proximately caused his alleged injuries. His mere allegation that the Goldens personally participated in or directed some unspecified negligent act of Baja Properties was insufficient. See generally *Henderman v. Walton County Water & Sewerage Auth.*, 271 Ga. 192, 194 (3) (515 SE2d 617) (1999). Because the evidence was not sufficient to create a genuine issue of material fact as to the Goldens' personal involvement in negligent acts, the trial court erred by denying the Goldens' motion for summary judgment on Ugo Mattera's negligence claims. Compare *Jennings*, supra. Therefore,

9

we reverse the trial court's denial of the Goldens' motion for summary judgment on the negligence claims Ugo Mattera asserted against them.

Case A17A1976

3. Ugo Mattera contends that the trial court erred by granting summary judgment to Baja Properties and the Goldens on his fraud claims. However, Ugo Mattera failed to come forward with evidence giving rise to a triable issue of fact as to one or more elements of his fraud claim.

"The tort of fraud has five elements: a false representation by a defendant, scienter, intention to induce the plaintiff to act or refrain from acting, justifiable reliance by plaintiff, and damage to plaintiff." *Mecca Constr., Inc. v. Maestro Investments*, 320 Ga. App. 34, 41 (3) (b) (739 SE2d 51) (2013) (footnote omitted) (physical precedent only); see *Kilroy v. Alpharetta Fitness, Inc.*, 295 Ga. App. 274, 275 (1) (671 SE2d 312) (2008). "Fraud, unlike negligence, breach of warranty or breach of contract, is premised upon the actual moral guilt of the defrauding party." *Lively v. Garnick*, 160 Ga. App. 591, 592 (1) (287 SE2d 553) (1981) (citation and punctuation omitted). "For an action for fraud to survive a motion for summary judgment, there must be some evidence from which a jury could find each element of the tort." *Kilroy*, supra at 276 (1) (footnote omitted). Actionable fraud does not result "from a mere failure to

10

perform promises made. Otherwise, any breach of contract would amount to fraud." *Buckley v. Turner Heritage Homes*, 248 Ga. App. 793, 795 (3) (547 SE2d 373) (2001) (footnote omitted).

Ugo Mattera asserts that Baja Properties and the Goldens participated in a scheme to use materials that were of inferior quality to those required by the contract, and attempted to charge him for amounts he did not owe. But Ugo Mattera pointed to, at most, evidence of a failure to conform with certain contract specifications, not evidence of fraud. See generally *Scarbrough v. Hallam*, 240 Ga. App. 829, 832 (3) (525 SE2d 377) (1999); *Lively*, supra. As to Ugo Mattera's assertion that the amount of the materialman's lien was incorrect, Baja Properties later corrected the amount upon learning that Ugo Mattera had paid one of the subcontractors directly. Inasmuch as Ugo Mattera failed to show evidence supporting each element of fraud (including scienter and damages), the trial court did not err by granting summary judgment to Baja Properties and the Goldens on the claims for fraud. See *Frazier v. Petecraft Aviation Svcs.*, 164 Ga. App. 568 (298 SE2d 532) (1982).

*Judgment in Case No. A17A1875 is affirmed in part and reversed in part. Judgment in Case No. A17A1976 is affirmed. Barnes, P. J., and McMillian, J., concur.*

11