### 39557. STRICKLAND v. PATCRAFT MILLS, INC.

SMITH, Justice.

Patcraft Mills, Inc. brought this action seeking a refund of $6,838 in corporate income taxes assessed by the State Revenue Commissioner and paid, under protest, for the fiscal years 1974, 1975 and 1976. The superior court judge found for Patcraft, and the Commissioner appeals. At issue are carpet sales made by Patcraft to out-of-state customers who took possession of the goods at Patcraft's place of business in Dalton, Georgia for immediate transport and

resale out of state. The question for decision is whether receipts from these sales constituted "gross receipts from business done within this state" for purposes of the three-factor formula for determining the taxable income of multistate corporations in Georgia. See OCGA § 48-7-31 (d) (2) (Code Ann. § 91A-3611). We conclude that the sales were not taxable as gross receipts in Georgia and, accordingly, affirm the judgment of the court below.

In all the transactions under review, Patcraft, a Georgia corporation, allowed out-of-state customers to pick up merchandise at its Dalton headquarters for transport and resale out of state. All sales were made either through independent sales agents whose offices are outside Georgia or directly by Patcraft to out-of-state customers. It is Patcraft's usual business practice to require all out-of-state customers who take possession of merchandise in Dalton to complete a form certifying that the goods picked up are intended for immediate transport and resale out of state.

Where a corporation such as Patcraft derives its income from business done both within and without the state, Georgia taxes only that income which is "reasonably attributable to the property owned and business done within the State," pursuant to a three-part statutory formula.[1] OCGA § 48-7-31 (d) (2) (C) (Code Ann. § 91A-3611) provides: "Gross receipts factor: The gross receipts factor is a fraction, the numerator of which is the total gross receipts from business done within this state during the tax period and the denominator of which is the total gross receipts from business done everywhere during the tax period. For the purposes of this subparagraph, receipts shall be deemed to have been derived from business done within this state only if the receipts are received from products shipped to customers in this state or products delivered within this state to customers. In determining the gross receipts within this state, receipts from sales negotiated or effected through offices of the taxpayer outside this state and delivered from storage in this state to customers outside this state shall be excluded . . ." The Commissioner argues that the sales in question were of "products delivered within this state to customers," and, as such, the receipts from these sales were includable in the numerator of the gross receipts factor when computing Patcraft's taxable net income. We disagree.

---

[1] The three factors which are considered are the corporation's property, payroll, and gross receipts. OCGA § 48-7-31 (d) (2) (Code Ann. § 91A-3611). For a history of Georgia's three-part formula for apportioning multistate corporate income, see *Oxford v. Nehi Corp.,* 215 Ga. 74, 78 (109 SE2d 329) (1959).

Although a literal reading of the statute would appear to support the Commissioner's position, we must construe the statute in accordance with prior judicial interpretations of the law. In *Undercofler v. U. S. Steel Corp.,* 109 Ga. App. 8 (135 SE2d 69) (1964), affirmed, 220 Ga. 553 (140 SE2d 269) (1965), the Court of Appeals decided that goods shipped by a multistate corporation from an out-of-state factory to its Georgia customers FOB were includable as "gross receipts" under the statute. Citing our decision in *Oxford v. Nehi Corp.,* 215 Ga. 74 (109 SE2d 329) (1959), the court held that the legislature, in enacting the predecessor to present OCGA § 48-7-31 (Code Ann. § 91A-3611), intended to adopt the "destination" or "place of the market" theory for apportioning gross receipts under the statute. "[T]he taxable nexus for gross receipts purposes is the *destination* of the goods." Id. at 11. The court concluded that the goods in question, although manufactured out of state and shipped FOB to Georgia customers, were destined for Georgia markets and thus taxable as gross receipts under the three factor formula.

This case presents a factual situation converse to *Undercofler,* but the controlling principle is the same in each case. Here Patcraft has manufactured goods in Georgia which were destined for markets outside the state. Applying "the simple rule of the destination of the goods," *Undercofler v. U. S. Steel Corp.,* supra, at 11, we conclude that the transactions under review involved goods destined for out-of-state markets and are not taxable as Georgia gross receipts. This result is, we think, preferable to the interpretation of the statute urged by the Commissioner for several reasons. The destination test, as opposed to the "transfer of physical possession" theory advanced by the Commissioner, is easy to apply and is not subject to manipulation by taxpayers. See *Undercofler,* supra, at 12. Moreover, a destination test correctly recognizes the contribution by a consumer state to the realization of corporate income, and acknowledges that "the process of manufacturing [results] in no profits until it ends in sales." Bass v. State Tax Comm., 266 U. S. 271, 282 (45 SC 82, 69 LE 282) (1924). See also Pierce, *The Uniform Division of Income for State Tax Purposes,* 35 Taxes 747, 780 (1957). Finally, we note that the courts of our sister state of Florida have adopted the destination test in construing that state's statutory provisions, which are similar to OCGA § 48-7-31 (Code Ann. § 91A-3611). See Dept. of Revenue v. Parker Banana Co., 391 S2d 762 (Fla. App. 1980). The trial court correctly applied the destination theory to the facts of this case and concluded that Patcraft's sales, destined for markets outside of Georgia, were properly allocable to other states for corporate income tax purposes. This is so regardless of the place of transfer of possession of the goods, or the manner by which the merchandise

arrived at its eventual destination.

*Judgment affirmed. All the Justices concur, except Hill, C. J., Weltner and Bell, JJ., who dissent.*

DECIDED MAY 11, 1983 —
REHEARING DENIED JUNE 1, 1983.

*Michael J. Bowers, Attorney General, William B. Wood, Warren R. Calvert, Assistant Attorneys General,* for appellant.

*William W. Bell, Jr., Wayne E. Thomas,* for appellee.

WELTNER, Justice, dissenting.

"Gross receipts factor. . . . For the purposes of this subparagraph, receipts shall be deemed to have been derived from business done within this state only if the receipts are received from products shipped to customers in this state or products delivered within this state to customers." OCGA § 48-7-31 (d) (2) (C) (Code Ann. § 91A-3611). Without question, the products here were "delivered within this state to customers." Accordingly, the receipts at issue are "derived from business done within this state."

I am authorized to state that Chief Justice Hill and Justice Bell concur in this dissent.